IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

COASTAL TELEVISION
BROADCASTING GROUP LLC a/k/a
COASTAL TELEVISION
BROADCASTING COMPANY LLC AND
COASTAL TELEVISION OF TUPELO LLC   PLAINTIFF/COUNTERDEFENDANT

v.   CIVIL ACTION NO. 1:24-CV-100-SA-DAS

MISSISSIPPI TELEVISION, LLC   DEFENDANT/COUNTERPLAINTIFF

ORDER AND MEMORANDUM OPINION

On May 1, 2024, Coastal initiated this civil action by filing its Complaint [2] in the Circuit Court of Lee County, Mississippi. The Complaint [2] brings claims for conversion, unjust enrichment, and breach of contract and seeks a declaratory judgment against Mississippi TV.[1] Mississippi TV removed the case to this Court on May 28, 2024, premising jurisdiction on diversity of citizenship.

Mississippi TV subsequently filed its Answer [11], wherein it asserted a counterclaim for breach of contract against Coastal. Thereafter, Coastal filed a Motion to Dismiss [18], seeking dismissal of Mississippi TV's counterclaim. The Court denied the Motion [18] *without prejudice*.[2]

Now before the Court is Mississippi TV's Motion to Compel Arbitration [30]. The Motion [30] has been fully briefed and is now ripe for review. The Court is prepared to rule.

---

[1] In its Notice of Removal [1], Mississippi TV points out that the Complaint [2] incorrectly names them "Mississippi Television, LLC" and denotes its correct legal designation as being "Mississippi TV, LLC."

[2] For context, the Court denied Coastal's Motion to Dismiss [18] *without prejudice* because Mississippi TV filed its Motion to Compel Arbitration [30] while that Motion [18] was still pending. The Court found it appropriate to first consider the Motion to Compel Arbitration [30] since the counterclaim sought to be dismissed could potentially be implicated by its ruling on the Motion to Compel [30]. *See* [36]. In other words, the Court did not issue a ruling on the merits of Coastal's Motion to Dismiss [18].

*Factual Background*

This case involves a contractual dispute between Coastal and Mississippi TV. Coastal is in the business of acquiring and operating television broadcasting stations and owns WLOV-TV in West Point, Mississippi. Mississippi TV operates WTVA, a broadcasting station located in Tupelo, Mississippi. WLOV-TV and WTVA serve the market in the Columbus, West Point and Tupelo areas.

In January 2012, a Joint Sales and Services Agreement ("JSSA") was entered into between the then-owners of WLOV-TV and WTVA. The JSSA provided that WLOV-TV would benefit from "WTVA's experience in managing and operating a commercial broadcast television station, advertising sales, and could utilize certain facilities, equipment and personnel." [11] at p. 10-11. On July 1, 2017, Coastal and Mississippi TV, as the new respective owners of WLOV-TV and WTVA, entered into an Amended and Restated Joint Sales and Services Agreement ("Amended JSSA"). According to Mississippi TV, under the Amended JSSA, Coastal assigned Mississippi TV the "exclusive right, subject to Coastal's supervision and control," to market and sell advertising broadcasts on WLOV-TV. *Id*. at p. 11.[3] In exchange, Coastal would receive "a percentage of net advertising sales and proceeds and a percentage of net retransmission fees." *Id*. The transmitter—a piece of equipment utilized for providing services under the Amended JSSA— was located on Mississippi TV's premises.[4]

---

[3] The advertising broadcasts included "all forms of national, regional and local spot advertising, sponsorships, direct response advertising, paid programming, including infomercials, and all longform advertising broadcast[s] on WLOV-TV. Mississippi TV also provided Coastal broadcast or simulcast local news, weather and sports programming on a daily and nightly basis." *Id.*

[4] Coastal alleges that it owns the subject transmitter.

The initial term of the Amended JSSA was from July 1, 2017 to January 1, 2022. The Amended JSSA provides that a term of renewal must be agreed upon no later than six months prior to the expiration of the initial term or subsequent renewal term.

On December 14, 2021, the Amended JSSA was amended to substitute Coastal of Tupelo, LLC with Coastal Broadcasting Company, LLC ("JSSA First Amendment"). The JSSA First Amendment also extended the term of the Amended JSSA through January 1, 2023 and all other terms remained in effect.

On May 4, 2022, Coastal mailed Mississippi TV a proposal to extend their agreement for an additional two years through January 1, 2025. The letter included a proposed Second Amendment and Restated Joint and Sales and Services Agreement ("JSSA Second Amendment"), which, according to the renewal provision in the Amended JSSA, needed to be agreed upon by July 1, 2022. Mississippi TV did not respond during that time frame.

Thereafter, on September 14, 2022, Coastal followed up with Mississippi TV via email pointing out that it had not received a response to the May 4, 2022 proposal. Also in this email, Coastal inquired about Mississippi TV's "level of interest, if any, in continuing [the Amended] JSSA" so that Coastal could determine how to proceed regarding a separate agreement with FOX. [2] at p. 18. Two weeks later, on September 30, 2022, Mississippi TV asked Coastal to resend the proposed JSSA Second Amendment for Mississippi TV's signature. Coastal resent the JSSA Second Amendment on the same date. Mississippi TV signed the JSSA Second Amendment and returned its signed version to Coastal also on the same date.

Coastal did not sign the JSSA Second Amendment. However, after the parties' September 2022 exchanges, they continued to work together—"Mississippi TV continued to perform the services provided for under the [Amended JSSA] and Coastal continued to operate WLOV-TV

3

utilizing Coastal's facilities and its transmitter located on [Mississippi TV's] property in Tupelo, Mississippi." [2] at p. 5-6.

Subsequently, the parties had a dispute as to the fees owed by Mississippi TV to Coastal under the Amended JSSA for the year 2022. The parties engaged a third-party auditor to review their financial records and determine the amount owed. On January 5, 2024, Coastal made a demand to Mississippi TV for payment of the 2022 fees based on the third-party auditor's determination. In its demand letter, Coastal also clarified that there were additional amounts due under the Amended JSSA and expressly reserved its right to collect those amounts. Mississippi TV made payment of the 2022 fees on January 29, 2024.

On February 1, 2024, Coastal emailed an undated letter to Mississippi TV notifying it that Coastal was ending the parties' "informal relationship" because it had entered into a new JSSA with other providers, WCBI TV, LLC and Morris Multimedia, Inc. [11] at p. 15. According to Mississippi TV, the February 1, 2024 letter was the first time it learned of Coastal's view that the JSSA Second Amendment was not valid and that the parties had been working together without a contract since January 1, 2023—the expiration date pursuant to the JSSA First Amendment. Mississippi TV alleges that the JSSA Second Amendment was valid and extended the contract term through January 1, 2025 and that Coastal was in breach of their agreement by virtue of its new contract with WCBI/Morris. Coastal alleges that Mississippi TV, upon receipt of the February 1, 2024 letter, removed the WLOV-TV feed from the transmitter located on Mississippi TV's premises and denied Coastal access to retrieve the transmitter.

Coastal does not contest this version of the facts but argues that the JSSA Second Amendment was not an effective extension of the Amended JSSA because it never signed it. On May 1, 2024, Coastal filed its Complaint [2] against Mississippi TV asserting claims for

4

conversion (for the transmitter), unjust enrichment, and breach of contract.[5] Mississippi TV then filed its counterclaim for breach of contract in its Answer [11].

Relevant to the parties' dispute, the Amended JSSA contains an arbitration provision which provides that "[a]ny dispute arising out of or related to this Agreement that [the parties] are unable to resolve by themselves shall be settled by arbitration in Mississippi by a panel of three arbitrators." [18], Ex. 3 at p. 10. Through the present Motion [30], Mississippi TV seeks to compel Coastal to submit all of its claims to arbitration. Coastal opposes the Motion [30].

*FAA Standard*[6]

"The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., reflects 'both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract.'" *Hayes v. Deery Valley Homebuilders*, 2025 WL 818293, at *2 (S.D. Miss. Mar. 14, 2025) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)). "Under the FAA, an arbitration clause in a 'contract evidencing a transaction involving commerce' is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). "Contracts between citizens of different states 'involve' commerce under the FAA. *Id.* (citing *Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Texas, Inc.*, 343 F.3d 355, 361 n.29 (5th Cir. 2003).[7]

---

[5] Coastal asserts a breach of contract claim under the original Amended JSSA for fees due in 2021, as well as an alternative breach of contract claim if the JSSA Second Amendment is found to be valid.

[6] "'[T]he Fifth Circuit has never discussed the appropriate standard for a district court to apply when considering a motion to stay or compel arbitration.'" *Nida v. Tactical Force, LLC*, 2025 WL 969247, at *2 (S.D. Miss. Mar. 31, 2025) (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 2010 WL 148292, at *3 (E.D. La. Jan. 11, 2010). But, "'[t]he majority of other circuits apply a summary judgment-like standard, giving deference to the claims of the non-movant.'" *Id.* (quoting *ConocoPhillips Co.*, 2010 WL 148292 at *3).

[7] The FAA applies here because the parties are citizens of different states and have entered into a contract containing an arbitration provision. *See* [1] at p. 3-4.

5

"[D]istrict courts have the authority to decide whether parties have agreed to arbitrate under a written agreement." *Nida*, 2025 WL 969247 at *2 (citing 9 U.S.C. § 4). "If a valid arbitration agreement exists, a court should then ask if "'any federal statute or policy renders the claims nonarbitrable.'" *Hayes*, 2025 WL 818293 at *2 (quoting *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017)).

*Analysis and Discussion*

The Court employs a two-step inquiry in deciding a motion to compel arbitration under the FAA. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006). First, a court must "determine whether the parties agreed to arbitrate the dispute in question," and, "[s]econd, a court must determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id*. (internal quotation marks and citations omitted).[8]

To determine whether the parties have agreed to arbitrate their claims, the Court considers "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 196-97 (5th Cir. 2015) (quoting *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir.2002). In its Response Memorandum [33], Coastal concedes that there was a valid agreement to arbitrate between it and Mississippi TV

---

[8] Coastal acknowledges that it only raises issues with the first step of the FAA analysis in opposing Mississippi TV's Motion [30]. *See* [33] at p. 6 n. 3 ("Coastal only raises issues with the first step."). In other words, in so stating, it appears to concede that the second step of the FAA analysis is not at issue or has otherwise waived any issue in that regard. *See Nida*, 2025 WL 969247 at *2 ("The Fifth Circuit has long held that issues not sufficiently briefed are waived.") (citing *Grimes v. Santander Consumer USA*, 2023 WL 5022276, at *5 n.6 (N.D. Tex. July 13, 2023)) (in turn citing *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001)). Therefore, the Court need not address the second step of the inquiry. *See Tittle*, 463 F.3d at 418 ("Because no party has argued that external legal constrains have foreclosed the arbitration of the claims at issue in this case, we need only conduct the first step of the analysis to resolve the arbitrability question.").

in the Amended JSSA. However, it takes the position that the Amended JSSA expired by its own terms on January 1, 2023 and that the claims asserted in the Complaint [2] (other than the breach of contract claim relating to unpaid amounts from 2021) fall outside of the arbitration provision's scope. *See* [33] at p. 7 n. 4 ("Costal does not challenge the validity of the arbitration agreement, only its scope."). Therefore, the only issue to be resolved is whether the dispute between the parties falls within the scope of the arbitration clause contained in the Amended JSSA.

To determine the scope of the arbitration clause at issue in this case, the Court must apply Mississippi law. *See Tittle*, 463 F.3d at 419 (citing *Washington Mut. Fin. Group v. Bailey*, 364 F.3d 260, 264 (5th Cir.2004) ("[I]n determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement."). "In applying state law, however, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'" *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); *King Const. of Houston, L.L.C.*, 782 F.3d at 197 ("…[S]trong federal policy favoring arbitration applies to the scope of an arbitration agreement…"). The parties do not dispute that Mississippi law applies here.

The Mississippi Supreme Court has held that "[a]rbitration agreements are contractual in nature; thus, parties will not be required to arbitrate matters which they did not consent to arbitrate." *Harrison Cnty. Com. Lot, LLC v. H. Gordon Myrick, Inc.*, 107 So. 3d 943, 955 (Miss. 2013). In determining whether the parties' claims fall within the scope of the arbitration agreement pursuant to Mississippi law, "[t]he Court must 'focus on factual allegations in the complaint rather

7

than the legal causes of action asserted.'" *Id.* at 956 (quoting *Scruggs v. Wyatt*, 60 So. 3d 758, 765 (Miss. 2011)).

Again, Mississippi TV argues that all of Coastal's claims are subject to arbitration.[9] In response, Coastal concedes that its breach of contract claim should be arbitrated but denies that its claims for conversion and unjust enrichment are subject to arbitration.[10] Coastal also argues that its action for declaratory judgment should be retained and decided by the Court. The Court will address each claim in turn.

Before turning to the individual claims, the Court notes that "[c]ourts often characterize arbitration language as either broad or narrow." *Virgil v. Sw. Mississippi Elec. Power Ass'n*, 296 So. 3d 53, 60 (Miss. 2020). "'Broad arbitration language governs disputes 'related to' or 'connected with' a contract, and narrow arbitration language requires arbitration of disputes that directly 'arise out of' a contract.'" *Id.* at 60-61 (quoting *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d

---

[9] According to the Complaint [2], the property that is the subject of Coastal's conversion claim is a transmitter allegedly owned by Coastal and located on Mississippi TV's premises. With respect to this claim, Mississippi TV alleges in its Memorandum [31] that "since filing the Complaint, Coastal took possession of the transmitter. Accordingly, Count 1 is moot and should be dismissed." [31] at p. 1 n. 1. Coastal disagrees and argues that ownership of the transmitter remains in dispute and that damages resulting from the alleged conversion have not been awarded. In its Reply [35], Mississippi TV contends that Coastal is confusing the transmitter with a "mask filter" and that there is no live controversy regarding the transmitter. [35] at p. 2-3. Alternatively, Mississippi TV contends that even if the conversion claim was not moot the claim would be subject to arbitration. Ultimately, the Court has not dismissed Coastal's conversion claim. The Court will therefore consider the claim in its analysis.

[10] Coastal brings a claim for breach of contract with regard to the Amended JSSA and alleges that Mississippi TV did not make certain payments in 2021 under that agreement. *See* [2] at p. 9. Based on Coastal's Response Memorandum [33], it appears that claim is the particular breach of contract claim Coastal concedes should be arbitrated. *See* [33] at p. 1-2. However, Coastal's Complaint [2] also brings an alternative breach of contract claim in the event the parties' agreement is deemed to have been extended past January 2023. *See* [2] at p. 10 ("However, even if the Agreement was extended, Mississippi Television is in material breach of the Agreement."). Coastal does not address the alternative breach of contract claim in its Response [33]. In the Court's view, the alternative breach of contract claim is distinct from the breach of contract claim Coastal concedes is subject to arbitration. The alternative breach of contract is an independent claim, which Coastal has apparently brought as an "alternative" to its unjust enrichment claim (based on its theory that the JSSA Second Amendment was not an effective extension of the Amended JSSA). The Court will also consider the alternative breach of contract claim in its analysis.

167, 176 (Miss. 2006)). The arbitration clause contained in the Amended JSSA provides, in pertinent part:

> Any dispute *arising out of or related to* this Agreement that Licensee [Coastal] and Provider [Mississippi TV] are unable to resolve by themselves shall be settled by arbitration in Mississippi by a panel of three arbitrators…No action at law or in equity based upon any claim arising out of or related to this Agreement shall be instituted in any court by any party hereto against any other party except: (i) an action for specific performance pursuant to Section 7 hereof, (ii) an action to compel arbitration pursuant to this Section or (iii) an action to enforce the award of the arbitration panel rendered in accordance with this Section. This section shall survive termination of this Agreement.

[18], Ex. 3 at p. 10-11 (emphasis added).

Here, the arbitration provision contains both narrow and broad language. Since the provision contains broad language (i.e. "related to"), the Court will analyze the scope of the provision based on that language. *See Virgil*, 296 So. 3d at 61 (analyzing an arbitration provision containing the phrase "arising out of or related to" and only considering the scope of the broad language). Accordingly, "[b]ecause broad arbitration language is capable of expansive reach, courts have held that 'it is only necessary that the dispute 'touch' matters covered by [the contract] to be arbitrable.'" *Id.* (quoting *Horton*, 926 So. 2d at 176). "'If the allegations underlying those claims 'touch matters' covered by the parties'… agreements, then those claims must be arbitrated, whatever the legal labels attached to them.'" *Harrison Cnty.*, 107 So. 3d at 955 (quoting *Scruggs*, 60 So. 3d at 765).

Furthermore, the Court is compelled to note that the parties raise certain arguments which implicate a ruling on the merits. For example, each side asks the Court to recognize either that the Amended JSSA was extended past January 2023 or that it was not. At issue in this case is whether a valid binding contract existed between the parties after January 1, 2023 (the term expiration date

9

pursuant to the JSSA First Amendment), and, if so, whether the terms set forth in the JSSA Second Amendment governed thereafter (and thereby extended the Amended JSSA). In deciding the issue before it, "[t]he court's sole function is to determine whether the claim[s] [are] referable to arbitration." *Smith Barney, Inc. v. Henry*, 775 So. 2d 722, 725 (Miss. 2001) (quoting *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 108 (Miss. 1998)) (internal quotation marks and citations omitted). The Court will look to the *facts* alleged in the Complaint [2] to make that determination and declines to incidentally rule on the merits of this case in doing so. *See Harrison Cnty.*, 107 So. 3d at 956; *see also Denmiss Corp.*, 726 So. 2d at 108 ("'The courts… have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.'") (quoting *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)). With this background in mind, the Court turns to the individual claims.

I. *Unjust Enrichment*

The factual basis underlying Coastal's unjust enrichment claim surrounds the collection of "advertising and retransmission revenue attributable to WLOV-TV" by Mississippi TV after January 1, 2023, that "in equity and good conscience belong to Coastal." [2] at p. 9. Coastal primarily argues that its claim for unjust enrichment falls outside of the scope of the arbitration provision because "[i]t is wholly unreasonable to interpret the arbitration agreement as requiring arbitration of claims that did not start to accrue until after the [Amended] JSSA expired." [33] at p. 9. In other words, Coastal contends that it did not agree to arbitrate claims based on "post-contractual" conduct and, thus, arising after the alleged expiration of the Amended JSSA. *Id.*

First, the Court cannot treat Coastal's legal contention that its unjust enrichment claim arises from Mississippi TV *post-contractual* conduct as a fact.[11] Irrespective of that legal contention, the Court notes that the arbitration provision explicitly states the arbitration clause "shall survive termination of this Agreement" and provides no limitation for disputes that "accrue" after the agreement is terminated. [18], Ex. 3 at p. 11. The Court need not delve further into Coastal's arguments to find that its unjust enrichment claim relates to the Amended JSSA.

The parties do not dispute that the nature of the services exchanged between them after January 1, 2023 was the same as those described in the Amended JSSA. Coastal alleges as much in its Complaint [2]. *See* [2] at p. 9 ("Mississippi TV continued to provide the *same services previously provided under the Agreement*, as well as accept and retain advertising and retransmission revenue attributable to WLOV-TV.") (emphasis added); *Id.* at p. 6 ("Mississippi TV has been unjustly enriched by continuing to obtain money for services provided by Coastal…"). It follows that the allocation of advertising and retransmission revenue was a matter covered by the Amended JSSA. The Complaint [2] alleges the following facts, in relevant part:

> 14. With respect to marketing and advertising services performed by Mississippi TV on behalf of Coastal, the Agreement entitled Mississippi TV to all revenues attributable to advertising sold on WLOV-TV. However, the Agreement required Mississippi TV to provide an accounting to Coastal through monthly reports of all advertising revenue as well as costs and expenses incurred by Mississippi TV in providing such services.
>
> 15. Contemporaneously with the monthly accounting, the Agreement also required Mississippi TV to pay a portion of its net revenue to Coastal based on a percentage of net advertising sales proceeds and a percentage of net retransmission fees in proportion to the total sales revenue for Mississippi TV. The payment structure

---

[11] Similarly, Mississippi TV argues, in part, that the Court should compel arbitration of Coastal's claims because "the [Amended] JSSA, and thus the Arbitration Provision, was still binding during the relevant time period pursuant to the terms of the JSSA Second Amendment." [35] at p. 5. That argument also implicates a ruling on the merits, which the Court refrains from doing as explained above.

>included a monthly base fee that was recoupable against the net revenue.

*Id.* at p. 3.

Again, Coastal's unjust enrichment claim is based on Mississippi TV's withholding of advertising and retransmission revenue "that should be turned over to Coastal." *Id.* at p. 9. The claim unequivocally touches a matter covered by the Amended JSSA—the allocation of advertising and retransmission revenue. To argue that the claim is not "related to" the Amended JSSA—the written agreement that had governed the parties' relationship for several years—is disingenuous. The claim must be arbitrated. *See Virgil*, 296 So. 3d at 61; *Harrison Cnty.*, 107 So. 3d at 955.

Coastal cites two cases in support of its position, *Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney*, 950 So. 2d 170 (Miss. 2007) and *Smith ex rel. Smith v. Captain D's, LLC*, 963 So. 2d 1116 (Miss. 2007), both which are unavailing.

In *Blakeney*, the Mississippi Supreme Court affirmed a trial court's decision not to compel arbitration as to a portion of plaintiff's claims based on certain fraudulent conduct perpetrated against him by a car dealership's employees after his purchase of a vehicle. 950 So. 2d at 177-788. Those claims were invasion of privacy, negligent hiring and supervision, civil fraud and intentional and negligent infliction of emotional distress, which all derived from the dealership employees' use of his name to forge titles to stolen vehicles. *Id.* at 172-73. In that case, the parties did not dispute that a valid arbitration agreement existed between them but disagreed as to the scope of the arbitration provision, which contained broad language covering plaintiff's vehicle purchase. *Id.* at 176. In finding that the claims fell outside of the scope of the arbitration provision, the Court explained that "no reasonable person would agree to submit to arbitration any claims concerning" the employee's fraudulent scheme. *Id.* at 178.

12

Relying on *Blakeney*, in *Smith*, the Mississippi Supreme Court decided a similar issue regarding the scope of an arbitration agreement on an application for employment. *Smith*, 963 So. 2d at 1118. There, plaintiff brought suit against her employer after her manager sexually assaulted her during work hours. *Id.* The arbitration provision used broad language and covered disputes related to plaintiff's employment. *Id.* at 1120-21. Reversing the trial court's grant of the employer's motion to compel arbitration, the court found that "a claim of sexual assault neither pertain[ed] to nor [had] a connection with [plaintiff's] employment. *Id.* at 1121.

*Blakeney* and *Smith* are both distinguishable from the case *sub judice*. In this case, the allocation of advertising and retransmission revenue was at the heart of the Amended JSSA. Unlike *Blakeney* and *Smith*, which involved vastly different facts, Coastal's unjust enrichment claim is based on the *same* services covered under the parties' contract, not unrelated conduct. Furthermore, the test for determining whether a claim falls within the scope of the arbitration provision is not "foreseeability" as Coastal appears to argue in analogizing the two cases. *See* [33] at p. 9. Rather, "it is only necessary that the dispute 'touch' matters covered by [the contract] to be arbitrable." *Virgil*, 296 So. 3d at 61 (internal quotation marks and citations omitted). As explained above, Coastal's unjust enrichment claim does so.

## II.     Conversion

The Complaint [2] brings a claim for conversion alleging that Mississippi TV converted a transmitter that belongs to Coastal after Mississippi TV received notice on February 1, 2024 that Coastal had entered into a new contract with a third-party. *See* [2] at p. 6. The Court has previously noted that this claim remains active although the parties appear to disagree on its mootness. Mississippi TV passingly argues that the claim "pertains to a transmitter purchased on behalf of Coastal pursuant to the [Amended] JSSA that Mississippi TV used to provide services to Coastal

13

under the [Amended] JSSA…" [31] at p. 9.[12] In its Response Memorandum [33], Coastal states that "there is no dispute that the arbitration clause does not cover… Coastal's conversion claim[.]" [33] at p. 2. Coastal appears to argue that the conversion claim falls within an exception to the arbitration clause because it seeks injunctive relief as a remedy.

The arbitration clause excepts from arbitration "…an action for specific performance pursuant to Section 7[.]" [18], Ex. 3 at p. 10. Section 7 provides as follows:

> The parties hereto agree that the services and facilities to be provided by each party to the other under this Agreement are unique and that substitutes therefore cannot be purchased or acquired in the open market. For that reason, either party would be irreparably damaged *in the event of a material breach of this Agreement* by the other party. Accordingly, either party may request that a decree of specific performance be issued by a court of competent jurisdiction, *enjoining the other party to observe and to perform such other party's covenants, conditions, agreements and obligations hereunder*, and each party hereby agrees neither to oppose nor to resist the issuance of such a decree on the grounds that there may exist an adequate remedy at law *for any material breach of this Agreement*.

*Id.* at p. 9 (emphasis added).

It is clear based on the plain language of Section 7 that the exception for a specific performance action applies to an action seeking to enforce the Amended JSSA upon a material breach. *See Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, L.L.C.*, 290 So. 3d 1257, 1259 (Miss. 2020) ("This Court must accept the plain meaning of a contract as the intent of the parties where no ambiguity exists."). Coastal does not link its conversion claim to any material breach of the parties' agreement that would justify the claim falling under the exception to arbitration. In fact, Coastal's reliance of Section 7 of the Amended JSSA is *contradictory to its position that there was*

---

[12] Though Mississippi TV does not provide extensive argument as to the arbitrability of the conversion claim, after arguing how each claim relates to the Amended JSSA it does make a general argument that all claims fall within the scope of the arbitration provision. *See* [31] at p. 9.

*no valid contract between the parties after January 2023*. Coastal simply does not bring its conversion claim seeking specific performance in order to enforce the Amended JSSA. For this reason, the Court rejects Coastal's argument.

The Complaint [2] alleges that the Amended JSSA "required Mississippi TV to provide the space, equipment, and technical and sales/advertising services necessary to operate and promote WLOV-TV, including tower space and transmitter building area for the placement of WLOV-TV's transmitter." [2] at p. 3. It also alleges that the transmitter was used to perform the services described in the Amended JSSA. *See id.* at p. 5-6. Accordingly, it was a matter covered under the agreement. For the same reason provided as to Coastal's unjust enrichment claim, the Court finds that Coastal's conversion claim is related to the Amended JSSA and must be arbitrated. *See Harrison Cnty.*, 107 So. 3d at 955.

III. *Declaratory Judgment and Alternative Breach of Contract*

The Court will analyze Coastal's claims for declaratory judgment and alternative breach of contract together as they are easily found to be arbitrable. Similar to its argument regarding its conversion claim, Coastal contends that "[b]ecause the parties agree that this Court has jurisdiction to decide Mississippi TV's claim for specific performance, the Court likewise has jurisdiction to decide Coastal's declaratory judgment action…" [33] at p. 2. Coastal raises no further argument with regard to its declaratory judgment action, and the Court rejects the argument on the same basis it did so above.

The Complaint [2] seeks "[a] declaratory judgment that the [Amended JSSA] expired by its terms one minute after midnight on January 1, 2023 and that, to the extent any informal agreement existed beyond January 1, 2024, that such an agreement was terminated as of February 1, 2024[.]" [2] at p. 11. In support of its position, Coastal primarily relies on the fact it did not sign

15

the JSSA Second Amendment. *See id*. Coastal does not seek declaratory judgment to enforce the Amended JSSA and, for that reason, the action is not "an action for specific performance" pursuant to the contract terms. Instead, the declaratory judgment claim directly relates to a matter covered in the Amended JSSA—the merger clause. *See* [18], Ex. 3 at p. 9-10 (providing that the contract is fully integrated and that modifications must be made in writing and signed by all parties). As to the alternative breach of contract claim, the claim is clearly related to the Amended JSSA as Coastal brings the claim in the event the agreement is deemed extended after January 2023. *See* [2] at p. 10. Irrespective of the "legal labels attached" to these claims, they are subject to arbitration. *Harrison Cnty.*, 107 So. 3d at 955 ("'If the allegations underlying those claims 'touch matters' covered by the parties'… agreements, then those claims must be arbitrated, whatever the legal labels attached to them.'") (quoting *Scruggs*, 60 So. 3d at 765).

In summary, all of Coastal's claims are arbitrable. In addition to the Court's reasoning provided above, the Court also considers that federal policy favors arbitration. *See Webb*, 89 F.3d at 258.

IV.     *Mississippi TV's Counterclaim*

Mississippi TV brings a counterclaim for breach of contract against Coastal based on its position that the Amended JSSA was validly extended by virtue of the JSSA Second Amendment. *See* [11] at p. 16. The parties do not dispute that the counterclaim is excepted from arbitration because Mississippi TV seeks specific performance of the terms of the Amended JSSA as its sole remedy, and neither party has requested that the counterclaim be compelled to arbitration. *See id*. at p. 10. However, the Court notes that, even if the JSSA Second Amendment were found to be a valid extension of the Amended JSSA and Coastal is found to have breached the same in January of 2024, the JSSA Second Amendment would have extended the agreement through January 1,

16

2025—a date that has already passed. *See* [30], Ex. 1 at p. 2. Again, Mississippi TV seeks only specific performance. It appears to the Court that Mississippi TV's counterclaim is moot because specific performance would be unavailable given the timeframe and current circumstances of this case. *See Morehouse v. Jackson,* 614 F. App'x 159, 163 (5th Cir. 2015) ("Mootness turns on the particular forms of relief requested by the parties. For example, where a plaintiff could have requested damages, but requested injunctive relief alone, the claim is moot when injunctive relief becomes unavailable.") (citing *H.K. Porter Co. v. Metropolitan Dade County*, 650 F.2d 778, 782 (5th Cir. Unit B July 1981)).[13] Accordingly, Mississippi TV is hereby ordered to show cause as to why the Court should not dismiss its counterclaim as moot and is directed to file a response explaining its position on that issue within 14 days of this order. *See Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) ("[A] federal court is obligated to raise the issue, *sua sponte*, if the facts suggest mootness notwithstanding the silence of the parties with respect to the issue."). Should Coastal desire to respond to any response submitted by Mississippi TV in this regard, it shall do so within 14 days from the date Mississippi TV files its response, if any.

*Conclusion*

For the reasons set forth above, Mississippi TV's Motion [30] is GRANTED. All of Coastal's claims shall be submitted to arbitration in accordance with the terms set forth in the Amended JSSA. The parties are further directed to file quarterly status reports updating the Court on the status of the arbitration. The first report is due three months from today's date.

Furthermore, Mississippi TV is directed to show cause as to why the Court should not dismiss its counterclaim for the reasons explained above. Mississippi TV shall file its response explaining its position as to the mootness issue raised above within 14 days of today's date. Should

---

[13] Additionally, Mississippi TV has represented to the Court that the transmitter utilized to provide services associated with the Amended JSSA is no longer in its possession. *See* [31] at p. 1 n. 1.

17

Mississippi TV fail to do so, the Court will dismiss the counterclaim as moot without further notice. If applicable, should Coastal desire to respond to any response submitted by Mississippi TV in this regard, it shall do so within 14 days from the date Mississippi TV files its response.

 This case is STAYED until further order of the Court.

 SO ORDERED, this the 25th day of August, 2025.

          /s/ Sharion Aycock
          SENIOR UNITED STATES DISTRICT JUDGE